

# MEMORANDUM OPINION

No. 04-08-00599-CV

**IN THE MATTER OF THE ESTATE OF** Guillermo G. "Willie" **MORALES**, Deceased

From the Probate Court No. 1, Bexar County, Texas
Trial Court No. 1998-PC-1897
Honorable Polly Jackson Spencer, Judge Presiding

Opinion by:    Steven C. Hilbig, Justice

Sitting:    Rebecca Simmons, Justice
Steven C. Hilbig, Justice
Marilyn Barnard, Justice

Delivered and Filed: February 10, 2010

AFFIRMED

William F. Morales ("Bill"), the independent executor of the Estate of Guillermo G. "Willie"
Morales, appeals an order denying him full reimbursement of expenses he claims were incurred on
behalf of the estate. We affirm the trial court's order.

## BACKGROUND

Bill Morales was named in his father's will as the independent executor of the estate. Two
of Bill's three siblings[1] objected to his appointment and litigation ensued over his capacity to serve
as the independent executor. After several months, the siblings agreed to Bill's appointment subject

---

[1] The decedent had three other children, Mary Grace, Frank and Helen. Mary Grace and Frank objected to
Bill's appointment.

to the restrictions set out in a rule 11 agreement. Bill was given the authority to act as independent executor of the estate, but was not allowed to take action without the advice of legal counsel. The agreement provided that any action taken without legal representation "is null and void and of no effect."

Over the course of the estate's administration, many disagreements arose between Bill and his sister Mary Grace. One major disagreement involved the estate's primary asset, a 15-acre tract of land. The property had been used as a salvage yard by a lessee who failed to register the yard with Texas Commission on Environmental Quality ("T.C.E.Q."). Because of environmental problems on the property, the estate was required to clean up the property before it could be sold, and there was disagreement regarding the proper way to accomplish the clean up. There were also disagreements over the proposed sale of the property. The rancor between Bill and Mary Grace resulted in substantial legal work and numerous contested hearings.

In February of 2008, after the property was sold and all the litigation was resolved, Bill sought reimbursement for expenses and payment of attorney's fees. The request for reimbursement included: $62,522.00 in attorney's fees for William Egger; $2,704.00 in court reporter's fees; $1,000.00 in mileage expenses; $10,450.00 in compensation to Bill for time away from work; and $1,549.00 in miscellaneous costs. Bill also requested approval of payment to Mary Roberts for $8,621.09 in attorney's fees. Mary Grace objected to the estate reimbursing Bill for all of these expenses. At the hearing on the motion for reimbursement, Bill testified briefly and the court took judicial notice of the hearings and orders in the case. The parties then agreed to have the court review the documentary evidence submitted by Bill and Mary Grace to determine the reimbursement

issue. The evidence included Egger's and Roberts's fee statements, cancelled checks, deposit slips, and estate records.

After reviewing the evidence the court found "approximately 81.1 hours of Attorney Egger's time was spent in the review and preparation of documents pertaining to the environmental clean-up of the [ ] 15 acre tract of land which provided a benefit to the estate" and were recoverable "as an appropriate estate expense." As to Egger's remaining fees, the trial court found "it is not possible to determine which of Attorney Egger's billed expenses relate to appropriate estate activities" and should be denied.[2] Additionally, the court found the rule 11 agreement limited the executor's attorney's hourly rate to $100.00; therefore, Egger's fees would be reimbursed in the amount of $8,110.00. The trial court denied Bill's request for reimbursement of $1,400.00 for court reporter fees, finding the fees were previously paid from estate funds. The remaining $1,304.00 in court reporter fees were denied because they were not supported by receipts.[3] Bill was reimbursed $1,000.00 for mileage, $1,500.00 for a cash advancement to the estate and $49.00 for miscellaneous expenses.

Bill filed a motion for partial new trial and rehearing and a request for findings of fact and conclusions of law. After the trial court denied the motion for new trial and rehearing, Bill filed a notice of limited appeal, complaining of the trial court's partial reimbursement of his attorney's fees and expenses. After the appeal was filed, the trial court made findings of fact and conclusions of law.

---

[2] Payment was allowed for Roberts's fees. No party sought review of that award.

[3] Bill does not complain about the denial of his claim for these fees.

Bill claims the trial court abused its discretion in denying his motion for new trial and rehearing. Bill raises legal sufficiency challenges, claiming the evidence conclusively establishes his entitlement to all of his attorney's fees and court reporter expenses. He also contends the trial court's fact findings regarding attorney's and court reporter's fees are against the great weight and preponderance of the evidence — a challenge to the factual sufficiency of the evidence. Additionally, Bill argues the rule 11 agreement applied only to the attorney's fees of his former counsel at Lane, Cannon & Taliaferro, L.L.P.; therefore, the trial court improperly limited his attorney's fee recovery to $100.00 an hour.

### STANDARD OF REVIEW

In an appeal from a bench trial, the trial court's findings of fact have the same force and dignity as a jury's verdict and are reviewable for legal and factual sufficiency under the same standards as are applied to the review of a jury verdict. *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991). To determine whether there is legally sufficient evidence to support a finding, we view the evidence in a light most favorable to the finding and indulge every reasonable inference to support it. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). We credit favorable evidence if a reasonable fact-finder could, and disregard contrary evidence unless a reasonable fact-finder could not. *Id*. at 827. If there is more than a scintilla of evidence to support the finding, the legal sufficiency challenge fails. *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc*., 960 S.W.2d 41, 48 (Tex. 1998). More than a scintilla of evidence exists "if the evidence 'rises to a level that would enable reasonable and fair-minded people to differ in their conclusions.'" *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004)(quoting *Merril Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706 (Tex. 1997)).

When a party attacks the factual sufficiency of an adverse finding on an issue on which he had the burden of proof, he must demonstrate on appeal that the adverse finding is against the great weight and preponderance of the evidence. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001). We consider all the evidence and set aside the judgment only if it is so contrary to the overwhelming weight of the evidence that it is clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986). Under either standard of review, the trier of fact is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 696 (Tex. 1986); *Raymond v. Rahme*, 78 S.W.3d 552, 556 (Tex. App.—Austin 2002, no pet.).

We review the trial court's conclusions of law de novo. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). Although appellants may not challenge a trial court's conclusions of law for factual sufficiency, we may review the trial court's legal conclusions drawn from the facts to determine whether the conclusions are correct. *Id*.

### DISCUSSION

A personal representative of an estate is entitled to all reasonable expenses upon satisfactory proof to the court the expenses were necessarily incurred in connection with the proceedings and management of an estate. TEX. PROB. CODE ANN. § 242 (Vernon 2003). To be reimbursable, the expenses must be incurred in connection with preserving, safekeeping, managing and distributing the estate of the decedent. *Id.*; *Park v. Hominick,* 522 S.W.2d 533, 537 (Tex. Civ. App.—Corpus Christi 1974, no writ). Legitimate expenses for the estate's administration include money paid from the representative's own funds, provided the expenses were reasonable and incurred for the benefit of the estate. *Park*, 522 S.W.2d at 537.

The award of attorney's fees is grounded in two fact findings and one legal conclusion made by the trial court. First, the trial court found Egger spent 81.1 hours on matters that benefitted the estate and were recoverable. Second, the trial court found that it was not possible to determine which of Egger's other fees related to services that benefitted the estate. Third, the trial court interpreted the rule 11 agreement and concluded reimbursable attorney's fees were limited to $100.00 an hour.

Bill agreed to have the trial court determine his reimbursement request based on the fee statements attached to his motion for reimbursement and did not have Egger testify at the hearing on the motion for reimbursement. Egger's fee statements contain time entries in excess of 400 hours. The statements include numerous block time billing entries that do not contain sufficient information to determine the amount of time spent on each activity listed or how the activities benefitted the estate. The time entries simply do not adequately identify which matters relate to work performed for the preservation, safekeeping, or management of the estate and what attorney time was spent representing Bill individually.

The relevant inquiry is whether Bill demonstrated the fees were incurred in the preservation, safekeeping, and management of the estate. *See id.* The trial court presided over every hearing in this case and took judicial notice of the proceedings and orders entered. The trial court is aware of the issues in the case, the disagreements between Bill and Mary Grace, the subject matter of the hearings, and the legal work that correlated to legal services for Bill's individual benefit and that done for the benefit of the estate. To prevail on his legal sufficiency challenge, Bill must demonstrate the evidence conclusively established the opposite of the trial court's finding — all of Egger's time was for the benefit of the estate. *See Ridgway*, 135 S.W.3d at 601. The record does

not support such a conclusion. Nor is the court's fact finding against the overwhelming weight of the evidence. Bill failed to meet his burden of proof that the fees were incurred in connection with preserving, safekeeping, managing and distributing his father's estate.

Bill also contends the trial court erred in concluding the rule 11 agreement limited his reimbursement for Egger's attorney's fees to $100.00 an hour. Bill does not argue the contract is ambiguous; rather, he argues the only reasonable interpretation of the agreement is the $100.00 limitation applies only to the law firm of Lane, Gannon, and Taliaferro L.L.P. In a dispute over the meaning of a contract, our primary concern is the true intent of the parties to the contract. *See Perry Homes v. Cull*, 258 S.W.3d 580, 606 (Tex. 2008). To ascertain intent, we look first to the language used in the instrument. *Id.* Contract language that can be given a definite or certain meaning is considered unambiguous and should be construed by the court as a matter of law. *Universal Health Servs., Inc. v. Renaissance Women's Group, P.A.*, 121 S.W.3d 742, 746 (Tex. 2003). However, if the language used in the contract is capable of more than one reasonable interpretation, an ambiguity exists and a fact issue is raised as to the parties' intent. *Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*, 940 S.W.2d 587, 589 (Tex. 1996). An ambiguity does not exist simply because the parties differ in their interpretations of the contract language. *In re D. Wilson Constr. Co.*, 196 S.W.3d 774, 781 (Tex. 2006).

Bill relies on two paragraphs in the rule 11 agreement to support his argument that the $100.00 fee limitation applies only to Lane, Gannon & Taliaferro, L.L.P. The first paragraph provides:

> All attorney's fees incurred up to and including the date that Applicant is appointed as Independent Executor will be paid to Lane, Gannon & Taliaferro, L.L.P. within thirty (30) days of Applicant's appointment as Independent Executor. Those attorney's fees throughout the remainder of the administration of the Estate will be

billed at an hourly rate of One Hundred Dollars ($100.00) per hour and will be paid from Estate funds . . . . Lane, Gannon & Taliaferro, L.L.P. will provide time sheets for all attorney fees relating to the probating of the Estate incurred from the date of Applicant's appointment as Independent Executor until the Estate is closed.

The second paragraph at issue provides that Bill "agrees to continue retaining the Lane, Gannon & Taliaferro", but "if for any reason this Law firm is to cease representing" Bill, then any actions taken without advice of counsel will be null and void. While this provision clearly demonstrates the parties contemplated the possibility of representation by a different firm, it does not alter the agreement's limit of $100.00 per hour for the executor's attorney's fees. Bill agreed to this stipulation in order to be appointed as independent executor. The trial court's interpretation is reasonable and the reimbursement for attorney's fees is limited to $100.00 an hour.[4]

Finally, Bill complains the trial court erred in finding "$1,400.00 of the requested Court Reporter's fees had been paid from estate funds previously and therefore, the request for reimbursement should be denied." The question is whether there is legally and factually sufficient evidence to support the court's finding of fact.

An entry on an accounting sheet submitted as evidence notes a payment to the court reporter, Cheryl Hester, from the estate's account in the amount of $1,400.00. However, Bill testified he paid Hester a total of $2,704.00, which included the $1,400.00 for a transcript, from his personal funds. Bill produced a receipt for the $1,400.00 payment, but the receipt does not identify the source of the payment. Bill relies on the following notation in Egger's billing statement to support his reimbursement claim: "telephone conference with Mr. Morales, advising him of the cost for the

---

[4] Bill contends the trial court's award of fees to Mary Roberts, Bill's counsel at the last hearing, was not limited to $100.00 an hour; therefore, the contract did not limit attorney's fees to $100.00 an hour for subsequent attorneys. No findings of fact or conclusions of law were requested or made as to Robert's award and no one complains on appeal of the award.

transcripts of the six (6) hearings, which he will personally go and pay Ms. Hester at the court house." Bill also relies on a letter from Hester thanking him for payment and referring to "your check number 0162." These documents do not indicate the bank account from which Hester was paid. The accounting sheet reflects the $1,400.00 payment to Hester was paid from the estate's account. This is legally sufficient evidence to support the trial court's finding.

In evaluating the factual sufficiency of the evidence, we should not intrude upon the fact finder's role as the sole judge of the weight and credibility given to any witness's testimony. *See Transmission Exch. v. Long*, 821 S.W.2d 265, 271 (Tex. App.—Houston [1st Dist.] 1991, writ denied). It is within the province of the fact finder to determine what weight to give contradictory evidence. *Id*. The fact finder is entitled to judge the credibility of the witnesses and may choose to believe all, some, or none of the testimony presented. *Miller v. Kendall*, 804 S.W.2d 933, 939 (Tex. App.—Houston [1st Dist.] 1990, no writ). Giving deference to the trial court as the fact finder, we hold that the finding made by the trial court was not so contrary to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust. There is legally and factually sufficient evidence to support the trial court's finding that Hester's fees were previously paid with estate funds.

The order for reimbursement of expenses and payment of attorney's fees is affirmed.

Steven C. Hilbig, Justice